## WILLIAM STEELE v. GILBERT MARTIN.

1. COURTS FOR TRIAL OF CONTESTED ELECTIONS. The provisions of the election law, under and by which courts may be constituted for the trial of contested elections, are authorized by the constitution, and are valid.

2. ———— *Irregularities do not Vitiate Proceedings.* When a court for contesting an election met pursuant to the notice required by law, and considered some questions connected with and preliminary to the case to be tried, and adjourned to the next day without a formal calling of the case for the trial of which they were so convened, but on the said next day they met, pursuant to such adjournment, and took the

proper oath of office, and before proceeding to try the case on the merits, *held*, that their subsequent proceedings were not affected or vitiated by such adjournment, or by the delay in formally_calling the case for trial, or in taking the oath.

3. NOTICE OF CONTEST—*Sufficiency of*. It is not necessary to a good notice under section 92 of chapter 36, General Statutes, that it should contain an allegation that the cause of contest therein named would have changed the result of the election proposed to be contested.

4. CANVASS OF VOTES—*Duty of Commissioners—Right to Office.*—[See note, and authorities cited, *post*, page 439.]

## from Labette District Court.

AT the general election held on the 2d day of November 1869, *Steele* and *Martin* were opposing candidates for the office of county commissioner for the First Commissioner District of Labette county. On the 5th of November the board of county commissioners met as a board of county canvassers, and on the canvass of votes by them for commissioner for said Commissioner District No. 1, they declared that said *William Steele* had received 148 votes, and said *Gilbert Martin* had received 51 votes; and they thereupon determined that said *Steele* was elected such commissioner, and their clerk issued to him the usual certificate of election.

In making the said canvass the board of commissioners rejected the poll-books returned from three of the election precincts, and refused to count and canvass the votes cast in said precincts, and returned in said poll-books, for the reason that some of said poll-books were not signed by all the judges and clerks of election, and in others blanks were unfilled, and other slight irregularities appeared. In these three precincts *Steele* received 41 votes, and *Martin* received 224 votes—making the entire vote for *Steele*, in the county, 189, and the entire vote for *Martin* 275, and showing a majority for *Martin* of 86 votes.

On the 20th of November *Martin* made and filed in the

office of the Probate Judge an affidavit, showing that he was on the 2d of November a qualified elector of Labette county, and alleging that at the general election held on that day he was legally elected to the office of county commissioner for District No. 1, setting up the facts above stated, and alleging " that the said commissioners in canvassing the votes cast at said election, rejected and refused without cause to count the votes cast at the precincts of Chetopa, Jacksonville and Ellston, which said votes would have changed the result of said election had the same been canvassed. Whereupon, and by reason of the premises, the said *Gilbert Martin* says he shall contest the election of said *William Steele*," etc.

On the 24th of November the Probate Judge issued a notice directed "To the Sheriff of Labette county," commanding such sheriff to notify *Steele* that *Martin* had commenced proceedings to contest said election, on the ground that said board of commissioners had illegally rejected and refused to count the votes cast in and returned from the ' precinct of Chetopa, *in Richland township*, and the precincts of Jacksonville and Ellston; and requiring said sheriff to notify said *Steele*, " that the " trial of said contest will be held at the court-house in " Oswego, in said county, on the 13th day of December " 1869, at 6 o'clock A. M., before W. H. Whitlock, Probate "Judge for said county, assisted by Enos Reed and G. P. " Peters, associate judges—and you are hereby com- " manded to notify said Enos Reed and G. P. Peters to " be and appear at the time and place aforesaid."

The record shows that said court for the trial of said contest met at the time and place designated; that all the members were present; that " orders of injunction " granted by the Judge of the Seventh Judicial District

were served on them, in four other cases of contest, (also noticed for hearing on that day,) restraining and enjoining them from proceeding in said other cases; and, after deciding that said injunction orders did not affect the contested case of *Martin against Steele*, adjourned until the next morning; that the court met the next day, and the members thereof were duly sworn, and proceeded to hear the case. *Steele* appeared and moved to dismiss the case because the court was not legally constituted; because the court had no jurisdiction; and because the "notice" did not state a legal cause of contest. The court overruled said motion, and proceeded to try the case, and on the 15th of December gave judgment in favor of *Martin*, declaring him to be duly elected to said office of commissioner. *Steele* excepted, and removed the case by petition in error to the district court.

The case was heard at the April Term, 1870, of the Labette District Court, when it was by said district court "ordered and adjudged that the judgment of the said " court organized to try the election contest between the " said plaintiff and the said defendant, be, and the same " is, hereby affirmed, with costs."

To such judgment of affirmance *Steele* excepted, and now brings the case to this court by petition in error.

*F. A. Bettis*, for plaintiff in error:

1. The Probate Judge is an officer provided for by the Constitution. His duties and powers are defined thereby. The power to try contested elections is not among them. The legislature had not the power to extend his jurisdiction, nor to *use* it for other purposes than those defined by the constitution. In the organization of the court for the trial of contested elections, he takes his seat as a

28

private citizen, and his office as Probate Judge confers no authority upon him in said court. That part of the law which authorizes him to issue process under the *seal* of the probate court, and *as* Probate Judge, in such cases, is clearly unconstitutional.

The Legislature is authorized to create "inferior courts;" but is this court *erected*, or only "authorized" by law? All judges must derive their authority from the State, by some commission warranted by law. Bac. Abr., Tit. *Courts*, vol. 2, p. 619.

These Judges, (Probate and his associates,) only derive their authority and their commission from the whim of an individual. They are called into existence by any person, at any time. Courts without existence, judges without commissions, were never contemplated by the constitution, and are unknown, outside of the statute for the contest of elections. We claim that this pretended court was without authority; that not coming into existence by any proper warrant or commission, its acts are void.

2. The District Court erred in affirming the judgment. The judgment of the court below was reeking with error. The record shows that Steele was notified that the trial would be had on the 13th of December. On that day the Probate Judge and two citizens met together, but took no step toward organization. The case was not called. On the 14th, they again met, and *then* attempted to organize. But being a court of limited jurisdiction, having no general terms, its whole power, authority, and time for meeting were confined and fixed by the notice: § 92, ch. 36, Gen. Stat. The court only had an existence by virtue of this notice, and failing to organize at that time, it was still-born.

It appears from the record that courts for the trial of certain *other* contests of election did meet on that day, but did not organize. Such court, though composed of the same parties, is a separate and district court for each case. As the notice in this case was the sole warrant of authority by which the court could act, it could not adjudicate the case at any other time, and having failed to convene, organize, and call the case on the 13th, the notice was *functus officio*, and the court for the trial of the case of "Martin v. Steele" consequently *never* had an existence.

3. But, if a legal court, proper jurisdiction did not attach:

The notice was process, and did not run in the name of the State of Kansas. §17, Art. 3, Cons.

The notice did not state a sufficient cause of action. Ch. 36, § 92, Gen. Stat.

The cause of action set forth in the notice is, "that the board of county canvassers rejected and refused to count the votes cast in certain townships." This is not sufficient. The sixth ground for contest mentioned in § 85, ch. 36, under which this action was brought permits the contest to take place, "For any error or mistake of the board of county canvassers in counting or canvassing the vote, *if the error or mistake would affect the result."* The notice simply alleges the rejection, but does *not* allege that thereby the result was affected.

4. The record shows that Steele was in fact elected. The "notice" issued by the Probate Judge alleges the rejection of the returns of the "voting precinct of Chetopa *in Richland Township."* The affidavit filed by Martin alleges the rejection of the poll-book of "Chetopa precinct," saying nothing about "Richland Township." On the trial

Martin offered the poll-books of "Richland Township," which were admitted, showing "147 votes" for Martin in said township! It is this kind of figuring which elects Martin. For anything appearing to the contrary, the "147 votes" counted for Martin on the poll-books of "Richland Township" had been previously counted and allowed him by the board of county commissioners.* Deduct these 147 votes from the number allowed by the court to Martin, and Steele is elected by a majority of 61.

5. The district court erred in giving judgment *for costs*, against Steele. The judgment of the court below is not for costs, and the power of the district court only extended to the affirmance or reversal of the judgment below.

*Bishop & Perkins*, and *J. H. Crichton*, for defendant in error. [No brief on file.]

The opinion of the court was delivered by

SAFFORD, J.: The first point made by the plaintiff in error goes to the validity of those provisions of the election law of this State, under and by virtue of which a court or courts may be constituted for the trial and deter-

<small>1. Courts for contesting elections, are legal.</small> mination of contested elections. It cannot be necessary to discuss this question from a constitutional standpoint, inasmuch as the power of the legislature in the premises is clearly granted in the constitution: (Art. 3, §1.) Then as to the proper exercise of that power, it is hardly to be questioned. The tribunals contemplated by the provisions referred to are invested with judicial functions, (2 Kas., 322,) and are

---

[* THE total vote counted and canvassed by the Board of Commissioners for Martin, in the whole county, was only "51." And as Martin's majority, as ascertained by the court, was 86, if said "51" votes were all cast in "Richland" Township, outside of "Chetopa precinct," and were counted twice, (which does not clearly appear from the record,) Martin would still have a clear majority of 35.—REPORTER ]

clothed with powers sufficient to meet all the require-
ments which can be made at their hands, and under the
circumstances in respect of which they may or can be
called upon to act. What more can be asked or required,
it is not easy to see. We conclude that the power of a
court constituted for the purposes named, and in pursu-
ance of the law applicable thereto, is not to be denied.

II. The second point made by the plaintiff in error, is,
that such court in this instance was not properly con-
stituted; and he bases his objection on the fact that it did
not convene and organize on the day on which under the
law it should have so done. As to the first
part of this objection, it is answered by a ref-
erence to the record. The members of the court did
meet on the day required, and considered some questions
connected with the case and preliminary thereto, and
adjourned without having taken the oath of office, and
without a formal calling of the case to be submitted to
them, which was set for trial upon said day. They were
however sworn on the next day, and before proceeding
at all with the trial on the merits. Did such proceeding
upon their part have the effect to vitiate their acts in the
premises, as claimed by the plaintiff in error? We think
not. The court met in pursuance of notice duly served,
as required by law; and although it might be necessary
for the members to take an oath of office before proceed-
ing with the trial of the case, they were most certainly a
sufficiently-constituted court, under the act creating or
authorizing such court, to adjourn their proceedings until
next day. Nor would jurisdiction of the case, and of the
parties thereto, be thereby lost, or in any manner affected.
Not only on general principles would the proceedings be
under the control of such court, but they are made so by

2. Proceedings not vitiated by irregularities.

express statute; and this would of necessity give the right to adjourn as was done in this case, or to any extent such as not to abuse the power thus given. There is no claim of abuse in this case; nor is it intimated that the party complaining was in any manner injured or even incommoded by the adjournment. And the same is true with regard to the failure of the members of the court to take the oath of office when they first met. No one was injured or incommoded thereby.

III. But it is further urged that the notice itself did not contain the requisites of notices in such cases under the law; section 92, p. 425, Gen. Stat. Comparing the notice with the section referred to, it appears that it was addressed to the sheriff of the county. It contained the names of the contestor and contestee; the names of the judges before whom the contest was to be had; a brief statement of the causes of the contest, and the day of trial. These are all the requisites named in the statute; and containing them, the notice was sufficient. It is proper to remark here, in answer to the arguments of counsel, that it is no objection to the notice that it did not allege that the acts of the board of canvassers set out and complained of as errors and mistakes, would, if rectified, change the result of the election to be contested. Such allegation would be no statement of a cause of contest, within the meaning of the term, as used in said section 92; and besides this, such allegation was included in the verified statement of the contestor, which was filed in the office of the county clerk pursuant to the preceding section 89, and being so on file was before the court as a paper in the case, and of course subject to the inspection of the contestee.

*3. Notice of contest—when sufficient.*

IV. Another point is made by the plaintiff in error, as respects the evidence which was before the court, and what was established thereby. In regard to this matter it is sufficient to say that, looking at the record, which is somewhat meager, and does not purport to present the evidence introduced, but only a summary statement of some portions, and the conclusions of the court, we are most certainly not able to say that the court acted otherwise than as warranted by such evidence.*

Other objections still are raised to the proceedings of the court before which the election contest was tried, and to those of the district court; but we do not think that they are material, and such as will warrant a reversal by this court.

The judgment of the district court is affirmed.

All the Justices concurring.

[* Note.—1. *Duty of Canvassers.* "The duty of canvassers is mainly ministerial—to count the votes returned, and make a statement of the result. They have no judicial power to try and determine a contest between disputing claimants:" 4 Wis., 567. "The canvassers could not judge of the sufficiency of the returns; they must count them. * * * It is alleged that the returns from these townships are insufficient, and should be rejected. * * * It is not fatal that the full particulars of time and place are not contained in these returns. * * * Neither the judges nor the clerks of. the election appear to have been sworn—and it is urged that this defect entirely vitiates the returns; but the law is not so."—10 Iowa, 216—219. While the *canvassers* cannot adjudicate upon the sufficiency of the returns, a *court* may, and in case of contest should, go behind the canvass and the certificate to ascertain the facts of the election. 4 Wis., 567, 800; 10 Iowa, 212, 218.

2. *Election—Right to Office.* It is the *election* by qualified voters, and not a canvass of the votes, which confers a right to office. The failure of the officers appointed by law to canvass the votes given at an election does not deprive a person who has been duly elected of his right to the office. Courts have the power to entertain proceedings to determine who has been elected, notwithstanding the canvassers have counted the votes, and awarded a certificate of election. 4 Wis., 800; 10 Iowa, 218.

"The person *having the highest number of votes* for any office shall be deemed to have been elected to that office, * * * notwithstanding the provisions of law may not have been fully complied with in *noticing* and *conducting* the election, so that the *real will of the people* may not be defeated by *any informality of any officer*."—§ 29, ch. 36, Gen. Stat , 1868.—Reporter.]