W. H. MORRIS V. R. J. VANLANINGHAM.

1. ELECTIONS; *Conduct of Judges and Clerks; Contest; Irregularities.* Where, in a contest for a county office, the evidence shows that in one township there were great irregularities on the part of the judges and clerks of the election, in closing the polls at noon, and with respect to the custody and control of the ballot-box during the day, and with respect to the disposition of the poll-books and ballots after a proper canvass made by said judges, and that neither of the poll-books nor the ballots were ever delivered to or received by the county clerk, but where the evidence further shows that no fraud was committed or attempted, and that no illegal vote was polled, and no legal voter was deprived of his vote, *held*, that said irregularities cannot vitiate said election, either in such township or in the county; but the person who received the highest number of legal votes polled at said election was duly elected.

2. [The particular acts constituting the "irregularities" complained of, and claimed to vitiate the election, are stated in the opinion.]

*Error from Neosho District Court.*

THE commissioners of Neosho county determined that *Morris* was elected to the office of register of deeds of said county at the general election in November 1871. *Vanlaningham* gave notice that he would contest said election, and served and filed the statement and gave the bond as required by § 89 of ch. 36, Gen. Stat. The court for the trial of such contest was duly constituted, consisting of J. L. Fletcher, probate judge, and T. C. Jones, and W. L. Simons, associates. Due notice was given, and the court met December 28th, 1871, and rendered its decision February 12th, 1872. *Morris* moved to dismiss the proceedings, for want of jurisdiction of the court, and afterward demurred to the statement as not stating facts sufficient to constitute a cause of action. Both motion and demurrer were overruled. *Vanlaningham* gave in evidence, over *Morris'* objection, the record-book containing the "determination" and "abstract" made by the county commissioners on the canvass by them of the returns made to and filed in the office of the county clerk, so far as the same related to the election of register of deeds of said county in November, 1871. Afterward *Morris* offered said records

in evidence, and they were received. *Morris* called B. M. Smith as a witness, and after he had testified as to other matters, *Morris* offered to prove by said Smith the following:

"That at the election held in *Tioga* township, in said county, on said 7th day of November 1871, the judges of the election closed the polls for one hour from 12 o'clock M. to one o'clock P.M.; that during that time the judges were absent from the place of holding the election, and the ballot-boxes were left on the table in the office of Allen & Allen, where the election was being held; that the judges afterward returned and opened the polls, and received votes, and that the polls were finally closed at 6 P.M."

The court refused to allow said testimony to be introduced, to which ruling *Morris* excepted. · The court, at the request of the parties, made specific findings of fact, as follows:

"1st. At the general election held in Neosho county on the 7th of November 1871, R. J. Vanlaningham and W. H. Morris, the contestor and contestee in this action, were candidates for the office of register of deeds of said county.

"2d. On the 10th of November 1871 the county commissioners and county clerk of said county assembled and canvassed the votes cast at said election for said office, and the commissioners found and determined from the canvass made by them that said Vanlaningham received 993 votes for said office, and that said Morris received 1040 votes for said office.

"3d. The returns of the election held on said day in said county were all in and canvassed by said commissioners from all the election precincts in the county except the precinct of Grant township; and that the actual number of votes cast for said Vanlaningham for said office in said county, excepting in said Grant precinct, was 993, as found and determined by said commissioners; and that the actual number of votes cast for said Morris for said office in said county, (not including Grant precinct,) was 1020, and not 1040 as shown by the footing of the records of the said commissioners; and by excluding the vote of Grant township said Morris had and received at said election 27 more votes for said office than said Vanlaningham received.

"4th. On said 7th day of November an election was held in Grant township in said county and that C. K., J. M. P., and A. M. acted as judges, and B. and P. acted as clerks. [Here follows a statement of the opening and closing of the

polls, the adjournment for dinner, the opening of the ballot-box, its custody, etc., as stated in the opinion, *infra*.]

"5th. At the close of the polls at 6 o'clock P.M. the judges of said election proceeded to inspect and count the ballots cast in said Grant precinct, and ascertained and determined the number of votes cast for the different candidates voted for on that day, including the contestor and contestee, and that the tally-lists and poll-books were properly made out and signed. [Here follows a statement of the delivery of said tally-lists and poll-books, and the ballots to C. K., one of said judges, and of their loss, as stated in the opinion.]

"6th. After said board canvassed said vote of said Grant township, the number of votes cast for candidates for different offices were announced, and from such canvass it appears that the contestor, Vanlaningham, received 46 votes for said office of register of deeds, and that the contestee, Morris, received 17 votes for said office, in said township—showing a majority of 29 votes in favor ⁻ᶠ said Vanlaningham in said Grant precinct."

As a conclusion of law, a majority of the court, (Messrs. Fletcher and Jones,) held "that the said election held in said Grant township was null and void; that the votes which the election board in that township declared were cast for the contestor and the contestee in this action, should not be counted; and that the election of said *Morris* be confirmed" —and judgment was given accordingly. Mr. Simons dissented, holding that the election in Grant township was legal, that the votes cast thereat ought to be counted, and that if counted and added to the canvass made by the county commissioners said *Vanlaningham* was elected by a majority of *two* votes, and was entitled to the office. *Vanlaningham* removed the cause by petition in error to the district court; and said district court, at the March Term 1872, *reversed* the judgment of said contest-court, and adjudged that said *Vanlaningham* was duly elected to said office of register of deeds, and ordered and decreed that the certificate of election theretofore issued to said *Morris* be set aside and annuled. From this judgment *Morris* appeals, and brings the case here on error for review.

*Hutchings & O'Grady,* for plaintiffs in error:

1. The "court for the trial of contested elections," was illegal. The probate judge cannot create a court; the judiciary is elective. Const., art. 3, § 11.

2. The "statement" of the defendant in error does not state a cause of action. An election cannot be proved by parol. Secs. 8, 19, 21, 25, 26, 27, 28, chapter 36, Laws 1868, in many respects may be directory in their requirements, but that a record of the election shall be kept and returned certainly cannot be so construed. If, instead of such certainty, we are to rely upon the mere biased memory of a partisan board of election, the theory of popular elections becomes a delusion and a farce. The names of the electors, the ballots, every safeguard provided by law for the prevention and detection of fraud is swept away, and the success or failure of any candidate, or measure, depends upon the memory of a board of election judges, who may in most cases be selected with a view to success without regard to the means employed.

3. The finding of the trial court, that the plaintiff in error received 17 votes, and the defendant in error 46 votes, in Grant precinct, (thus giving the defendant in error 2 majority in the county,) is not sustained by the evidence. All the testimony is preserved in the record. As to the number of votes cast for each candidate in Grant precinct, it will be seen what conflicting and uncertain testimony this finding rests upon. If the testimony be construed most strongly against the party producing it, the finding should have been for the plaintiff in error.

4. But the election in said Grant township was void, and the votes cast thereat should not be counted. At such election the judges adjourned and dispersed, leaving the polls closed from one to one-and-a-half hours in the middle of the day, one of the judges carrying the ballot-box home with him. The ballot-box was opened twice during the day, and the ballots counted; and finally both copies of the poll-books,

tally-lists, ballots, in fact every vestige of the record of the election was lost or destroyed, and no means of ascertaining the number of votes for either candidate could be had, except the recollection of the election board.

The closing of the polls and opening the ballot-box during the day goes to the substance of the election, and is a direct violation not only of the very spirit of our whole election law, the right to vote secretly, but of one of the plainest provisions of the statute. Sec. 8 of the general election law provides that the judge "shall immediately put the ticket in the box without inspecting the name written or printed thereon;" and § 7 provides that the judges "shall lock the ballot-boxes securely, and they shall not be reopened until for the purpose of counting the ballots therein at the close of the election." It would be monstrous to say that the judges might open the ballot-box from time to time as the election progresses, and thereby inform the candidates for whom each elector voted and condition of the ballot. If the precedent is once judicially established that judges of election may close the polls, open and carry away the ballot-box during the time when by law the elector is entitled to the right to cast his ballot, surely there is no extent to which fraud may not be practiced, and detection be impossible. It is under the pretext of adjourning for dinner that nearly all of the ballot-box stuffing in the disgraceful county-seat elections in this state has been perpetrated. When is added to this the right on the part of the judges to open and carry off the ballot-box, close the polls indefinitely and disperse, it is idle to talk about detecting fraud, and the law becomes a mockery. Time and place are of the substance of an election. 7 A. L. Reg., 88; Brightly's Leading Cases on Elections, 251, 451, 502; 5 Cal., 243; 15 Cal., 221; 31 Cal., 82; 1 Zabr., 317; 20 Penn. St., 493; 5 Rawle, 75; 2 Swan, 68; 15 Ohio St., 535.

5. The trial court erred in refusing to admit the testimony which plaintiff offered to prove by B. M. Smith. The testimony was clearly competent, and should have been received.

*Stillwell & Baylies,* for defendant in error:

1. The findings of fact made in the case by the court for trial of contested elections, are not open to review in this court, there having been no proper exception taken to said findings, nor motion made to set aside the same. *Ortman v. Giles,* 9 Kas., 324; *Ide v. Churchill,* 14 Ohio St., 373.

·2. The court for the trial of contested county elections is authorized by the constitution. *Steele v. Martin,* 6 Kas., 430.

3. The "record of elections" was properly introduced in evidence on the trial of the cause. There being no statement, however, in the record, as to what the book contained, or what it tended to prove, it is difficult to perceive how this court is to determine whether said book, and the journal of the commissioners were beneficial or injurious to either party by being introduced in evidence; and as it appears that plaintiff in error introduced the same records in evidence in his defense, he certainly cannot complain.

4. There was no issue in the contest under which the proposed testimony of B. M. Smith would have been competent or proper. The allegation in the statement of contestee respecting the election in Tioga township, was solely concerning an error on the part of the board of election in said township respecting the *counting of the vote,* and not as to any irregularity in the conducting of the election. The testimony was clearly immaterial. In itself it would have proved nothing; and it does not appear that there was any attempt on the part of the contestee to connect with it any other testimony tending to prove that any irregularity or informality existed respecting the election in Tioga township.

5. The decisive point in this case, and in our judgment the only one that is properly before the court for its consideration, is this: Was the court for the trial of contested elections right in its conclusions as to *the law* applicable to the facts found to exist in the contest in controversy respecting the election in Grant township? With reference to the irregularities of the election board in Grant township, we submit

that the rule of law is correctly stated by this court in the case of *Gilleland v. Schuyler*, 9 Kas., 569, as follows: "Mere irregularities on the part of election officers, or their omission to observe some merely declaratory part of the law, will not vitiate the election." See also *Fry v. Booth*, 19 Ohio St., 25; 8 N. Y., 67; 10 Iowa, 212; 4 Wis., 420; 12 Cal., 352; 26 Cal., 161; 1 Oregon, 123; 34 Barb., 626; 1 Ala., 114; 2 Tex., 217; 10 Minn., 112; 43 Penn. St., 384; 12 Mich., 508; 4 Cold., 34; 13 La. An., 301; 34 Ind., 425.

It is the exercise of the right of choice by the electors, that confers the right of a party to an office, and not mere acts of omission or commission on the part of officers appointed to superintend the reception and counting of the ballots. (15 Ill., 492.) If the validity of elections is made to depend upon what may be done or left undone by the election board, then it will be in the power of the board alone, by a disregard of a mere directory provision of the statute, to disfranchise the voters of an entire election district, and thereby defeat the will of the people by some trifling informality, to prevent which is evidently the express object of the statute. (Ch. 36, § 29, Gen. Stat.) Both reason and authority are in accordance with the doctrine that mere irregularities which deprive no legal voter of his vote, and do not otherwise affect the result, will never invalidate an election. (29 Ill., 54.) In some cases, the fact that the board adjourned for dinner, coupled with the fact that an examination of the contents of the ballot-box was had during the day, might be matters proper to be taken into consideration in connection with other circumstances as tending to show a fraudulent intent on the part of the election board to defeat the will of the people. But in the present case these informalities stand solitary and alone. It was not shown nor attempted to be shown that a single voter was deprived of his vote, or that any other act, of whatever character, was perpetrated tending to prevent a full and fair expression of the popular will.

6. The official county canvass gave Morris 1,040 votes, and Vanlaningham 993. The findings of the trial court

show an error of 20 votes in favor of Morris—that his vote, as *returned* was only 1,020, (instead of 1,040, as *canvassed;*) and this vote does not include Grant township. The findings further show that in Grant township Morris received 17 votes, and Vanlaningham 46. These added, give Morris a total of 1037, and Vanlaningham a total of 1039—showing that Vanlaningham was elected. The action of the district court, in rendering the judgment that the court for the trial of contested county elections should have done upon its findings of fact, was proper. Code, § 559; *Roberts v. Corbin*, 28 Iowa, 355; *Gilmore & Smith*, 28 Iowa, 422.

The opinion of the court was delivered by

VALENTINE, J.: On the 7th of November 1871, at the general election held in Neosho county, W. H. Morris and R. J. Vanlaningham were voted for, for the office of register of deeds. On the Friday next following the election the county commissioners of said county canvassed the election returns, and declared W. H. Morris to have been duly elected to said office. Vanlaningham contested the election. A court was organized according to law, (Gen. Stat., 424, §§ 85 to 105,) for the trial of said contest. The case was tried; the court made special findings of fact, and a majority of the court determined as a conclusion of law from said special findings of fact that said Morris was duly elected to said office. One of the members of said court however dissented from the conclusion of the majority; he believed that said Vanlaningham was duly elected to said office, and not Morris. Vanlaningham then took the case to the district court of said county on petition in error. The district court reversed the judgment of the trial court, and declared Vanlaningham to have been duly elected to said office. Morris now brings the case to this court on petition in error, and asks this court to reverse the judgment of the district court.

Many questions have been raised, some of which it will not be necessary to notice at all; and others will require only a bare notice. The main question in the case is the one upon

which the trial court differed. It is claimed by the plaintiff in error, that the court that tried this contest is not such a court as is authorized by the constitution. We think it is. (*Steele v. Martin*, 6 Kas., 430; *Norton v. Graham*, 7 Kas., 166.) It is also claimed that the "statement" of the contestant was not sufficient. We think it was. It seems to be claimed that the contents of lost election returns cannot be proved by parol evidence. We think they can, where that is the best evidence that can be obtained. Plaintiff in error offered to introduce certain evidence (that of B. M. Smith) which did not tend to prove or disprove any fact in issue in the case. Besides, there is nothing in the record which tends to show that the evidence would have been material upon any issue that could have been presented in such case. It does not tend to show that either party received more or less votes than were counted for him. It does not tend to show that any illegal vote was polled, or that any legal voter was prevented from voting. There is not even anything in the record tending to show which party received a majority of the votes of Tioga township, (and this evidence had reference solely to Tioga township,) or how many votes either party received in said township. We therefore think there was no substantial error in excluding this evidence. It was not error for the court to permit the contestant to introduce the records of elections in evidence, over and against any objection that could have been made by the contestee. The contestee however gave no reason why he objected. And even if there were error in the introduction of said evidence, the contestee waived the same by afterward introducing the same records as his own evidence, and generally for anything they might prove, and not specially for some particular purpose. Neither was it error for the trial court in their findings to correct the erroneous calculation of the county clerk, or the county commissioners. The evidence introduced on the trial was not absolutely harmonious in every respect, but it amply sustained the findings of fact of the trial court, so far as we can judge from what is given in the record. The contestee tendered by his answer

certain issues upon which the trial court made no specific findings. There was no evidence however introduced on the trial which tended to prove the allegations of the contestee's answer in this respect, and the contestee did not ask to have specific findings made thereon. (*Moore v. McIntosh*, 6 Kas., 39.) The findings however that were made covered by general terms these issues, and really rendered more specific findings unnecessary. The trial court found the exact number of legal votes that each party received, and that was sufficient. It made no difference how many illegal votes were cast, as they were not counted. The court counted all the legal votes, and none but legal votes. This the findings sufficiently show, and this was sufficiently definite, certain, and specific for all the purposes of this case. It was a substantial finding upon all the issues presented by the contestee, and sufficiently definite.

The findings of the court show the following irregularities which occurred in Grant township at said election: The polls of said election were closed at about the hour of noon, and remained closed for a period varying from an hour to an hour-and-a-half, and during this period the election board dispersed for dinner. Two of the election judges took the ballot-box with them to dinner, and kept it within their view during that time. Just before the board adjourned for dinner, and immediately upon reassembling, the ballot-box was opened by one of the judges in the presence of the other members of the board for the purpose of ascertaining the number of ballots it contained. After the election was closed in the evening, and the poll-books properly made out, signed, etc., both poll-books, and all the ballots were handed to one of the judges of the election, who was also the township trustee of Grant township, and he was to take one of the poll-books and the ballots to the county clerk, and preserve the other poll-book in his office. Neither of the poll-books nor the ballots were "put under cover," or sealed up, or directed to the county clerk. They were put into the ballot-box, open, and loose, and in that condition handed to said judge

of election and township trustee; and on the morning of the third day thereafter he lost them, and they have · never been found. Therefore no poll-book nor any of the ballots of Grant township were ever delivered to or received by the county clerk. Now it must be admitted that the closing of the polls at noon for an hour or more, was an irregularity. (Gen. Stat., 404, §6.) The opening of the ballot-box before and after the adjournment for dinner, was also an irregularity. (Gen. Stat., 408, §17.) The failure of the judges of the election to "put under cover one of the poll-books, seal the same, and direct it to the county clerk," was also an irregularity. (Gen. Stat., 410, §26.) The failure of the judges of the election to carefully "envelope" all the ballots, and deliver them to the county clerk, was also an irregularity. (Gen. Stat., 410, §§ 26, 27.) And the loss of both the poll-books and all the ballots by said judge of election and township trustee, and his failure to deliver any of them to the county clerk, or to preserve one of the poll-books in his office, was a strange irregularity. But all of these are mere irregularities. No fraud was committed or attempted; no illegal vote was polled; and no legal voter was deprived of his vote. The utmost good faith characterized the whole of the proceedings, except possibly the loss of said poll-books and ballots. These mere irregularities cannot therefore vitiate the election either in Grant township, or in the county. The person who received the highest number of legal votes polled at said election was duly elected. The spirit of the election laws of this state is embodied in the following provision:

"SECTION 29. In all elections for the choice of any officer, unless, it is otherwise expressly provided, the person having the highest number of votes for any office shall be deemed to have been elected to that office; and whenever it shall satisfactorily appear that any person has received the highest number of votes for any office, such person shall receive the certificate of election, notwithstanding the provisions of law may not have been fully complied with in noticing and conducting the election, so that the real will of the people may

not be defeated by any informality of any officer." (Gen. Stat., 411.)

The findings of the trial court are sufficient to sustain the judgment of the district court. The judgment of the district court is therefore affirmed.

All the Justices concurring.